Case No. 23-1365, Thomas Esordi v. Macomb Township MI et al., argument not to succeed, 15 minutes per side. Mr. Granzato, you may proceed for the appellant. Good morning. Good morning. Mark Granzato on behalf of the plaintiff appellant. I have reserved five minutes for the rebuttal. Very well. This case comes before this court in a quite unusual procedural posture, in my opinion. I attempted during the research of this brief to find an identical case. I couldn't. I found the closest analogy in the collateral estoppel reis judicata realm. But this case was originally filed in Macomb County Circuit Court when it was amended, and it had originally only state court claims. When it was amended, the plaintiff added a 1983 case. It was then removed to federal court. The federal judge involved elected not to entertain the state court claims, so they went back. And the most important thing that happened in the Macomb County Circuit Court was that a motion for summary disposition was filed, which sought to strike the breach of contract claim, the Michigan claim. The trial court addressed a significant issue of Michigan law, it seems to me, and that is could the board, as of January 2017, make a contract with Mr. Assorti that was enforceable against a new board? And what the trial court held in the case, the Macomb County Circuit Court case, was that this type of contract binding a future board was, in fact, in violation of Michigan public policy. The key thing is that that ruling by the trial court, two important things, it became the basis for the federal district court's decision to, in fact, strike the claim, at least as to the township, because what the district court ruled was that, based on the persuasiveness, if you will, of this Macomb County Circuit Court ruling about Michigan law and contract in violation of public policy, that Mr. Assorti could not make out a 1983 claim because he had no constitutionally protected right. So the trial, the Macomb County Circuit Court's judge decision in that case really became the basis, at least as to the claim against the township. What's important for you to know, and I think you've gathered this, that decision is on appeal to the Michigan Court of Appeals. It presents, in my estimation, a very significant issue of Michigan law on a number of fronts. And looking back over the briefs that have been filed here, I guess they're going to look, at least on this particular issue of the breach of contract claim, the briefs that were filed here look a whole lot like the briefs that have been filed or will be filed in the Michigan Court of Appeals on this significant issue of Michigan law. So we have a federal court decision predicated on a circuit court decision that is now under appeal to the Michigan Court of Appeals. Now, what we have argued unsuccessfully to date, both in the Macomb County Circuit Court and in the Federal District Court, that the decision made by the Macomb County Circuit Court was incorrect, that in fact it isn't a violation of public policy. The Michigan Court relied on one Michigan Court of Appeals decision from 1988, the Potter case. Are you asking us to hold this case, ending the ruling by the Michigan Court of Appeals? It's going to be coming. We know when it's going to be argued.  The briefs haven't been all filed. That's correct. That's correct. So when do you anticipate it would be argued and then decided? Well, I think my brief was filed in June. Mr. Saylor's brief I don't think is in yet. So we don't have all of the appellee's briefs. My guess is the way the sluggish pace of the Michigan Court of Appeals is such, do you remember? We are talking. It kind of waned in both ways. Sometimes we were current, other times we were way behind. Our court's been the same way. Okay, when do you just say it? You can't. You don't have... Yeah, I would say six months. It'll be next summer. Yeah, it might be next summer. Next summer it would be argued and then might be decided three months later, two months later. So we're looking at more than a year down the road. So I guess my question is, I mean, that is the same issue that we have here, whether there is a... There's no question. ...protected interest in the... Yeah, there's one additional issue which... ...violates public policy to have a contract like this. And what... So are you asking us to hold it or not? Yes, I would prefer that you hold this case. That's what I would prefer. I would have preferred that. I mean, right now you've lost federal court, state court, but you say you have a strong case on appeal and strong enough that we ought to wait, I guess. I am semi-confident that I do have a decent argument. Okay, well, all right. So your arguments are about whether the Potter case of the Michigan Court of Appeals violates the Supreme Court case of Davis, and therefore we shouldn't file Potter because we ought to... Davis is precedent. So I guess... You have... Let's get into that argument then, I guess. Yes, you have the essence of my argument. What I have argued unsuccessfully in the Macomb County Circuit Court is that Potter was categorically wrong in one respect, but the Potter court said specifically that it was addressing an issue of first impression. That's clearly incorrect, because in 1913, the Michigan Supreme Court decided the Davis case... Don't we have different statutes, though, governing municipal corporations as opposed to school districts? And they're written differently, aren't they? Yes, there are special rules that pertain to townships, which is covered in this. There are big issues of Michigan law embedded in this case, there is no question in my mind. In fact, we have, I think, some pretty good lawyers on the appellate, both sides of this case, and I wouldn't be terribly surprised if the decision of the Court of Appeals goes even a step farther, because this is a big time issue of what can a... What can one board do in terms of contractual rights that would end up binding the future boards? In deciding whether there are differences, or whether Potter was wrongly decided not following Davis, I mean, the statute governing township boards is MCL 41.187, and it says the township board may employ a township manager and other employees as are necessary. They shall serve at the pleasure of the township board. And there, that statute, to me, implies that a set contract here for a term of years with just cause termination, I guess this wasn't for set term years, but it had a just cause provision that it violates that statute. My question is, in Davis, which involved public schools, a public school superintendent, is there a similar statute governing public schools that also say that school superintendents shall serve at the pleasure of the township board, and therefore the argument could be made that the contract there violated the statute? No. Isn't that important, though? Well, let me say that this in itself, the statute that has been raised by the township, presents another very important question of Michigan law, because the suggestion is being made that every employee of a township serves at the whim of the board. How does that, the question I would pose, is how does that interact with a bona fide, good faith, just cause contract? Because if you think about it, the argument goes way too far, because to my knowledge, every union contract, every one of them, has a provision for just cause termination. Okay? If this statute does in fact apply to a bona fide just cause contract issued to somebody connected with the township, we have just declared every union contract void as against public policy. It can't be. It just cannot be. They have the argument based on this statute. When Mr. Saylor submits his brief to the Michigan Court of Appeals, we will in fact have to be addressing this question. But there's a very important question, principle of right to contract, and the inner workings of that principle and this particular statute, because it cannot, it cannot without creating havoc, apply to just cause contracts that are negotiated in good faith. I've used up all my time, I'm impressed. Thank you. Okay. You've reserved five minutes rebuttal, I guess. You'll have your five minutes. Good morning. Good morning, your honors. May it please the court. Daniel Saylor, appearing on behalf of the defendant, Appali McComb Township. I guess first I'd like to address the question of the court holding on to this case for a  I think that's totally unnecessary. Mr. Gonzado says that the district court's opinion is, I'm sorry, that the state circuit court opinion was the basis of the district court's opinion, that it was, that its decision was predicated on the McComb County decision. This is not a collateral estoppel or res judicata situation at all. The court never hinted that it was, felt bound by that decision, and never uttered the words, you know, collateral estoppel or res judicata. Rather What about the law of the case? I mean, it's the same case, isn't it? I mean, this case was all together and then part of it was split off, and I mean, isn't the law of the case doctrine applied? Well, our district judge didn't even refer to that. Rather, our district judge said that the district, I'm sorry, the state court's analysis was persuasive. It relied on Potter. It also looked at, and it agreed that that seemed like a correct analysis that Potter governs this decision, and it said it would therefore follow the state court opinion, but it didn't mean follow in the sense of being bound. It said follow in the sense that, yeah, I find that persuasive. That's my analysis as well. More importantly, the district court's decision is supported by and consistent with both Potter and Davis, and this court can recognize that as well. And that really kind of goes to the most, the heart of the issue, because the plaintiff's general position here is that Davis, the 1913 Supreme Court decision, held that school boards, municipal boards, and so on, may bind subsequent iterations of their councils or their boards to just cause contracts subject only to an inquiry into the reasonableness of the contract, which I don't think a court today would have that kind of caveat. But nevertheless, the plaintiff therefore says that Potter is fatally inconsistent with Davis, but that's not true because in Potter, the city charter specifically declared that a city manager hired by the council, quote, shall hold office at the pleasure of the council. And the Potter court relied on that just as much as it did as the prevailing common law rule that a council cannot bind a subsequent council. So that was the basis of Potter, and sure enough, in Davis, it expressly acknowledges that such a restriction applies to limit a board or a council from entering any kind of one of those binding contracts. The court said, the Supreme Court in Davis said, if, in terms, a power is in one part of the statute given without words of limitation, such as authority to hire somebody, authority to hire a city manager or something like that, if it is given without words of limitation, but in another part of a statute is limited expressly or by necessary implication, it is limited and by the statute. So it acknowledges, but then of course they proceeded to say, but there is no such limitation here in Davis. And council's appellant's brief specifically said, in Davis, the Michigan Supreme Court first noted that there was nothing in the governing statutes that limited the power of the board to enter into such a contract. That's from the plaintiff's appellant's brief. Contrast that, so therefore there's nothing inconsistent between Davis and Potter because Davis didn't have such a restrictive statute and acknowledges that when there is one, it clearly applies. And Potter refers specifically to the city charter that does restrict hiring an employee to be at the pleasure of the council. Every employee? What about the argument that, well, does that mean union contracts that require good cause to discharge are also invalid? Yeah, I don't think that it is nearly that broad. The statute speaks specifically to when the council itself retains, let me find the exact statute, the township board may employ a township manager or other employees as are necessary. They shall serve at the pleasure of the township board. That's when the council or the board itself is retaining that type of an employee. I think that not every employee of the township is directly hired by the township board. I think this is when the township board is actually engaging an employee for a specific role and shall perform duties lawfully directed by the township board. I don't think that there's such a direct contact between the township board and every township employee. Is it construed that way by any court in Michigan? I'm not aware of any such. But clearly, Mr. Sordi was an employee, no question, he falls within the term employee within that statute and he was retained by the township board directly. So, however broad or narrow that statute may be, it clearly applies to him. And so he was hired with the restriction that he shall serve at the pleasure of the township board. And we've cited previous cases in our brief that, you know, that phraseology, that phrasing means just cause contract, or a good cause can't be fired without good cause. If they're hired at the pleasure of the retaining council or board. You mean the opposite, don't you, that it doesn't, it means that a just cause firing contract is not permitted. That is what I mean, thank you. So, my point for that is that Davis and Potter, contrary to the opponent's contention, are not materially inconsistent, not at all inconsistent with respect to this case. Is it significant Potter did not cite Davis at all in the opinion? I suppose it was not cited to the court and they did not find it. Just as in this case, frankly, you'll find that it was not in the original briefing and it's not cited in the state court's opinion either because it also wasn't cited at that point. It was only later in the litigation when, frankly, Mr. Granzato was retained and was able to do his great legal research and find this old case. But luckily it is not inconsistent. I see that there can be differences in the statutes, which is, I think, probably your best argument. But both cases talk about public policy, do they not? And Potter's view of public policy, I think, is a lot different than Davis' view of public policy, isn't it? Well, yeah, I would say that... I mean, Davis talks about public policy. There's nothing wrong from a public policy standpoint to bind future boards for the term of the superintendent and Potter says the opposite as to a city manager. Well, this is against public policy to do this, to bind a city manager's contract, you know, the term of the... At least public policy, there's conflict, isn't there? Well, but as I say, the Potter decision relied equally on that city charter and what it perceived to be not just public policy, but in order to find out what the public policy is, it examined the prevailing common law rule across the country. And it wasn't just a majority and minority view. I can't remember the exact phraseology, but the court said the heavy majority... But if you look at the common law rules, I mean, the Michigan Court of Appeals has to follow the common law rule established by the Supreme Court from 1913, don't they? They can't review common law anew and say, all right, so the Supreme Court ruled this in 1913, it's no longer the common law. That's not the prerogative of the Court of Appeals, is it? I see my time's expired, should I go ahead and answer? I would say that... Well, the short answer is no, it cannot disregard something like that, but also... That's almost what I see them doing, because I think you're right, they do survey what the common law is throughout the jurisdictions. They cite treatises and this and that, without citing the Supreme Court case that although it's a different area, it's education as opposed to municipal corporations, that it's pretty close. But I would also note that that Davis case in 1913, what the rule that it establishes is utterly inconsistent with present day views of contracts. Well, I know, but Michigan Court of Appeals can't overrule the Supreme Court, I mean, you agreed with me on that. Well, unless it views another Supreme Court decision as having vitiated that approach. There isn't one, is there? Well, under... In terms of this general expansive view of, okay, certainly both eras announced that freedom of contract is important, you should respect what the contract is. But in Davis, they say, so therefore, subject to a factual inquiry into the reasonableness of the contract, it's binding. Well, the Michigan Supreme Court would never say that, oh, well, subject to reasonableness, that's going to be binding. Look at the... I hope I can remember the name of the case. Well, I'm drawing a blank, I should have had that written down. But the Michigan Supreme Court case in 2005 specifically said, a court has no business reviewing the reasonableness of the party's terms of the contract. And that certainly is the current prevailing view. My time has expired. Wrap it up, we'll give you 30 seconds to wrap it up. All right. Well, there are other plaintiffs in their brief, which we, of course, didn't get a chance to respond to the reply brief, raised two ways to get around this Statute 4175A, which says that he is hired at the pleasure of the board. One is they argue without citation that, well, by entering into this contract, the board forfeited its right to have a just cause contract. Well, that's meaningless because that would suggest that they're prohibited from entering one in a binding contract like this unless they so enter such a contract. That's no different than saying that. The other point they say is that the other statute, 41.187, which is an authorization for the township to hire an attorney to prosecute municipal ordinance violations and represent the township. He says that there's nothing in there that limits the retention to at the pleasure of the board, but it's silent on it. And that has to be read with 4175A, which because he is an employee, and specifically not just an attorney, but a unique combined role employee, certainly that text applies to his employment. And so, therefore, reading those two provisions together, which you need to do, there is no conflict between the two. He is subject to that restriction, and therefore that employment is, employment contract is void, is against public policy under the statute, and, therefore, there is no constitutionally protected property interest in his continued employment. All right. Thank you, Mr. Siegel. Thank you. Good morning. Good morning, Your Honors. Josephine DiLorenzo on behalf of Defendant Janet Dunn. I was going to rely on my brief as to this main issue that counsel was just talking about because our arguments largely track those of the township. So as to Ms. Dunn specifically, summary judgment is proper in any event because she didn't participate in the act that is the basis of Mr. Rossorti's claim. The law is that personal involvement is necessary to establish liability under Section 1983, and Section 1983 is generally not implicated unless the state actor's conduct occurs in the course of performing an actual or apparent duty of his office. So here, Ms. Dunn didn't act under color of state law because she didn't act at all. She was not in office at the time Mr. Rossorti's position was eliminated without the pre-termination hearing, so she didn't participate in the vote. So the argument, Mr. Rossorti argues instead that she was an active and vocal supporter of his termination, that she somehow influenced the vote by the actions that she took several months earlier, but there was no case law stating that just being an active and vocal supporter is enough to establish a due process violation. And just for what it's worth, we went through this in our brief, but none of the board members testified that they spoke to her regarding this vote, and they all arrived at their positions for independent reasons. There's also no evidence that Ms. Dunn had any specific discussions about Mr. Rossorti with Mr. Viviano on this issue. Mr. Viviano is the new township supervisor, so he actually testified that after he took office, he consulted with an attorney on this issue. So there wasn't anything implicating her. But I would just emphasize that any actual due process violation would involve the failure to provide the pre-termination hearing. It's not simply the vote, and we relied on Loudermill for that because the Supreme Court said that the root requirement of the Due Process Clause is that the individual be given an opportunity for a hearing before deprived of any significant property interest. So again, Ms. Dunn couldn't have acted to deprive him of this pre-termination hearing because she wasn't a supervisor. She wasn't in office. She wasn't on the board. So it's pretty straightforward. But I'd be happy to answer any questions that you might have. Any questions? Judge Gilman? Thank you. Thank you. Good morning. Good morning. Jackie Klima on behalf of Defendant Christy Posey. And similar to Ms. DiLorenzo's argument, I would like to say my client, Christy Posey, at the time of the incidents in question, which is the November 2020 meeting where there was a vote to terminate Mr. Sorgi's appointment, my client recused herself both from the vote and from the discussion. And that's the only data issue here. Any arguments, any conduct prior to that are completely irrelevant. Most of plaintiff's allegations have proven to be untrue by the evidence of the five members who did vote to eliminate this position all testified that they did not take or they were not influenced by Ms. Posey. The only one who actually talked to her was Mr. Viviano, and that was after he had made the decision. So whether or not this case has stayed for the contract issue, I would respectfully request that the claims against my client be dismissed, both because she does not have individual liability under 1983, and also because she is entitled to qualified immunity. As the district court pointed out, plaintiff did not have any published case saying that someone who's not involved in the vote or the determination or the discussion could be liable under these circumstances, nor was there a constitutional violation. And that deficiency has not been corrected on appeal. There has been no case cited that at the time of her conduct she would be on notice that any of her conduct was unconstitutional or unlawful, which it wasn't. So on those two grounds, I believe the claims against her should stay dismissed regardless of what happens with the contract. And with respect to the contract, I'll rely on my brief. You did ask a question about a Michigan case, but I think we did have one in our brief, the Armstrong case, which says that where a township has the authority to create a position, it also has the authority to abolish it. And in that, they were citing another provision of this in the same area of law as MCL 42.9, which gives the township the authority to create positions for additional officers as may be necessary to administer the affairs of the township. Thank you for your argument. Any further questions? No, thank you. Renzo Otto, you've got five minutes rebuttal. With respect to Posey and Dunn, I will rely on my brief. With respect to what Mr. Saylor argued to you, he tried to undercut my point about union contracts. I'm only guessing, but I'll bet every union contract the township has ever entered into was approved by the board. I don't think his attempt to distinguish that from this case is going to wash. I guess the takeaway that I would ask you to get from this argument is we are here on some very thorny and very important issues of Michigan law. There's an added complexity I haven't talked about yet, and that is the Terrien case from the becomes a contract that's in violation of public policy. As you undoubtedly remember, the Michigan Supreme Court, especially the one of a few years ago, was very much into the sanctity of contract, and in that phase they adopted in the Terrien case a very limited range of cases in which you could, in fact, deem a contract to be voidable as against public policy. We have made the argument, I think it's in our reply brief, but it's certainly an argument... One of the ways is if it violates a Michigan statute, right? Yes. And that's the argument here. I mean, the statute, at least one of the statutes says that employees serve at the pleasure of the board. So if there's a contract that violates that statute, it's going to violate Michigan public policy. Is that right? That is one of the exceptions. So, again, we're getting into the applicability of 41.75A that Mr. Saylor has argued. Again, the point I would like you to draw from this argument is we have a bunch of very important and very thorny issues of Michigan law, and they all happen to be at present in the Michigan Court of Appeals. In light of that fact, I would ask you to hold this decision and let the Michigan Court of Appeals weigh in on these issues. Thank you. Very well. Any further questions? All right. Case will be submitted. I believe that concludes our oral argument docket.